UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL GUILIANO

v.                                          CASE NO. 3:00CV2115 CFD

NATIONAL RECOVERY AGENCY, INC.              February 10, 2004
ARTHUR A. KUSIC

JOINT TRIAL MEMORANDUM

1. TRIAL COUNSEL:

For plaintiff:                          For defendants:
  Joanne S. Faulkner                      Eric T. Dean Jr.
  123 Avon Street                         111 Whitney Ave
  New Haven, CT 06511                     New Haven CT 06510
  (203) 772-0395                          (203) 787-5885

                                        David S. Doyle
                                        111 Whitney Ave.
                                        New Haven, CT 06510
                                        (203) 787-5885

2. JURISDICTION:  Plaintiff asserts that this Court has jurisdiction pursuant to

28 U.S.C. § 1331, §1367, and 15 U.S.C. § 1692k.

However, Defendants assert that all of Plaintiff's FDCPA claims are barred, and

that remaining state claims under CUTPA and any other state statute should be

dismissed or transferred to state court.

3. JURY:  Plaintiff claimed his complaint to a jury.

Plaintiff asserts that no party claimed the counterclaim to the jury; thus common

questions are to be tried to the jury preceding any bench trial. Beacon Theatres v.

Westover, 359 U.S. 500, 510 (1959). Defendants assert that their counterclaim can be tried to the jury.

Defendants assert that the counterclaim can be tried to the jury. Defendants further assert that all FDCPA jury claims are barred (see motions in limine), and that any resulting CUTPA or state claims should be dismissed or tried to a bench trial.

4. <u>NATURE OF CASE</u>:

<u>Plaintiff states</u>: This case is brought under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692c, -d, -e, and - f, and the Connecticut Unfair Trade Practices Act. Plaintiff seeks statutory damages, actual damages, punitive damages, injunctive relief, attorney's fees and costs.

<u>Defendants state</u>:

Defendant Arthur Kusic, an officer of Defendant corporation NRA, has been sued in his capacity as an individual, and denies liability, in that he is not a debt collector within the meaning of the FDCPA, that he had nothing to do with collection of the debt in issue from Plaintiff, and Plaintiff has not attempted to pierce the corporate veil. See 15 USC Section 1692a(6) and subsection (F)(iii) [not debt collector]; and <u>White v. Goodman</u> (2000, CA 7, Ill), 200 F.3d 1016 [FDCPA is not aimed at shareholders of debt collectors operating in corporate form unless some basis is shown for piercing the corporate veil]; and <u>Pettit v. Retrieval Masters Creditors Bureau, Inc.</u>, 211 F.3d 1057 (7th Cir 2000) [largest shareholder and president of collection agency was

not himself a "debt collector" under FDCPA, regardless of whether he exercised extensive control over agency].

Defendant NRA denies that it was a "debt collector" within the meaning of the law [see 15 USC Section 1692a(6) and subsection (F)(iii)], and denies liability under the FDCPA and CUTPA, in that it complied with all provisions of the FDCPA, CUTPA, and any other state or federal statute in issue.

Both Defendants advance the affirmative defenses and counterclaim listed below.

Nature of and authority for plaintiff's claims that defendants violated the law in improperly taking possession of, obtaining and keeping plaintiff's social security disability funds while collecting plaintiff's residential telephone debt, and in other manners:

1. NRA had no authority from plaintiff's creditor (SNET) to collect. As a consequence, every action taken by Defendants in collecting and keeping plaintiff's money was unlawful, unfair, and deceptive. 15 U.S.C. § 1692e(10). Defense counsel admitted that "[T]here are no such [collection] agreements between NRA and Arthur Kusic and SNET." [Ex. A to Doc. No. 125]. Plaintiff has filed a motion in limine (Doc. No. 118) seeking a default against defendant Kusic and an order establishing for purposes of this action that defendants had no right or authority to collect on behalf of SNET.

2. The first communication plaintiff received from defendant was a telephone

3

call of June 23, 2000. NRA was required to provide the required information that plaintiff could dispute the debt within five days thereof. 15 U.S.C. §1692g. It did not.

3. Plaintiff did not receive any written notice providing the information that plaintiff could dispute the debt as required by 15 U.S.C. § §1692g at any time. NRA violated §1692g.

4. NRA twice electronically removed funds from plaintiff's bank account without his written authorization. This Court has already ruled that taking the funds without a written authorization was unlawful in violation of the Electronic Fund Transfers Act. Plaintiff contends that violation of the EFTA is a per se violation of the FDCPA, e.g., 1692e(5) or (10). See Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996) (failure to give proper 1692g notice also violates §1692e); Creighton v. Emporia Credit Service, Inc., 981 F. Supp. 411 (E.D. Va. 1997) (same).

5. Additionally, NRA's acts in withdrawing the funds was a misrepresentation that it could legally take the funds. 15 U.S.C. § 1692e and –f(1).

6. NRA did not give any advance warning to Mr. Guiliano that it was taking money from his bank account. This concealment of information was unfair or deceptive.

7. NRA discussed plaintiff's debt with a third party, Hazel Patterson. (Judicial admission, 10 of Doc. No. 101). The collector who discussed the debt with her knew that it was illegal to do so. 15 U.S.C. § 1692c(b).

8. If defendant is able to show that it sent a letter to plaintiff containing the §1692g notice, plaintiff will contend that any such letter violated the FDCPA as more

fully explicated in his Motion for Summary Judgment (Mem., Doc. No. 66, 88, 90) and

Appeal (Mem., Doc. No. 109), in that it confused or misled the least sophisticated

consumer about his rights. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)

(letter may not confuse the consumer about his validation rights)

9. The acts of defendants also violated the Connecticut Unfair Trade Practices

Act (CUTPA), Conn. Gen. Stat. §42-110b as found by the Banking Department's

Reg.Conn. State Agencies §36a-809-3, several subsections of which directly parallel the

FDCPA. This entitles plaintiff to additional, nonduplicative relief, including an

injunction and punitive damages.

10. The Court did not decide any issues of law in the summary judgment rulings,

except that the taking indisputably was illegal based on the EFTA. In any event,  this

Court may reconsider interlocutory rulings at any time before final judgment herein.

F.R.Civ.P. 54(b); Cf. Rules 59(d), 52(b). Liddy v. Standard Drywall, Inc., 875 F.2d 383

(2d Cir. 1989); Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270, 277 (2d Cir.

1996) (can reconsider prior rulings); Langevine v. District of Columbia, 106 F.3d 1018,

1023 (D.C. Cir. 1997) (law of the case does not apply to interlocutory orders).

11. In Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992;152 L. Ed. 2d

1  (2002),  The Court vigorously endorsed the simplified notice pleading standards it

has always upheld; refused to adopt a "heightened pleading" standard; noted that Rule

8(e)(1) and 8(f) further underscore the "notice pleading" concept; and relied on its own

longstanding cases such as  Conley v. Gibson, 355 U.S. 41, 47-48 (1957) ("The decisive

answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim); and Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U. S. 163 (1993) "[F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." Id. at 168-69.

Nature of and authority for Defendants' defenses to Plaintiff's claims:

1. [re supposed lack of authority]:

NRA had authority to collect the SNET debt in that SNET referred the debt to Forward Thinking and NRA for collection. All payments collected by NRA from Plaintiff were properly applied to Plaintiff's SNET debt.

In addition, at no time did Plaintiff plead in any of this three complaints (the 2nd two of which were in response to an Order by Judge Droney for a more definite statement), that the 15 USC Section 1692c was an element of his case, and Plaintiff never claimed that NRA had no authority to collect the SNET debt. He cannot raise those issues now for the first time.

2. [re supposed failures of June 23, 2000, telephone call]

NRA sent an initial letter to Plaintiff, including required FDCPA validation notices, on or about 5/31/00. The letter included all required FDCPA notices. Judges Garfinkel and Droney determined that this letter did not violate any provision of the FDCPA—it is the law of the case; Plaintiff is collaterally estopped from attempting to

raise this issue. Defendants will file a motion in limine to prevent Defendants from attempting to raise this issue.

Plaintiff has judicially admitted that this initial letter of 5/31/00 was sent, in that Plaintiff filed a Motion for Summary Judgment in this case, stating that Defendant NRA sent this letter, and that the letter allegedly violated 15 USC Section 1692g. So Plaintiff had admitted that Defendant NRA's first contact with Plaintiff was on 5/31/00, and not in the telephone call of 6/23/00. (see Plaintiff's Motion for Summary Judgment for said admission)

3. [re supposed lack of FDCPA validation notice]

NRA sent an initial letter to Plaintiff, including required FDCPA validation notices, on or about 5/31/00. The letter included all required FDCPA notices. Judges Garfinkel and Droney determined that this letter did not violate any provision of the FDCPA—it is the law of the case; Plaintiff is collaterally estopped from attempting to raise this issue. Defendants will file a motion in limine to prevent Defendants from attempting to raise this issue.

Plaintiff has judicially admitted that this initial letter of 5/31/00 was sent, in that Plaintiff filed a Motion for Summary Judgment in this case, stating that Defendant NRA sent this letter, and that the letter allegedly violated 15 USC Section 1692g. So Plaintiff had admitted that Defendant NRA's first contact with Plaintiff was on 5/31/00, and not in the telephone call of 6/23/00. (see Plaintiff's Motion for Summary Judgment for said admission)

4. [re supposed violation of EFTA]

The Court found that the EFTA was not successfully pleaded by Plaintiff, and is not part of Plaintiff's complaint. The EFTA has a 1-year statute of limitations, and Plaintiff did not plead any violation of the EFTA within this 1-year time deadline. Hence, Plaintiff cannot argue that Defendants violated the EFTA. Moreover, nothing the Defendants did constituted a violation of the EFTA anyway. A violation of the EFTA does not constitute a per se violation of the FDCPA.

5. [re supposed misrepresentation in withdrawing funds]

Plaintiff entered into a voluntary payment plan with NRA to pay his SNET debt. Plaintiff authorized the withdrawal of funds from his bank account to pay Plaintiff's SNET debt. Pursuant to Plaintiff's agreement and authorization, 2 payments of $50 each were withdrawn from Plaintiff's bank account, and forwarded to SNET as payment on Plaintiff's SNET debt. NRA is not guilty of any misrepresentation.

6. [re supposed lack of advance notice for requested withdrawals]

As Judge Garfinkel and Judge Droney pointed out in their denial of Plaintiff's Motion for Summary Judgment, it is disingenuous and unbelievable for Plaintiff to enter into a payment plan, authorize withdrawals from his bank account, and then claim that he had no advance notice of these withdrawals; after the first withdrawal, it furthermore all the more disingenuous and unbelievable for Plaintiff to claim he had no notice that further withdrawals would be made.

Nonetheless, advance notices were sent to Plaintiff announcing each requested

withdrawal in advance, according to internal procedures established by NRA. If any individual notice was inadvertently not sent, there was no intentional violation of the FDCPA; rather such omission was a bona fide error, which occurred in spite of procedures implemented to avoid such errors. See 15 USC Section 1692k(a)(3).

7. [re supposed discussion by NRA with third party of Plaintiff's debt]

NRA and its employees never discussed Plaintiff's debt with Hazel Patterson, and never admitted such a thing. See paragraph #7 of Defendants' Answer.

In addition, at no time did Plaintiff plead in any of this three complaints (the 2nd two of which were in response to an Order by Judge Droney for a more definite statement), that the 15 USC Section 1692c (the basis for Plaintiff's #7) was an element of his case, and Plaintiff never claimed that NRA had no authority to collect the SNET debt. He cannot raise that issue now.

8. [re supposed FDCPA violations of initial letter]

(a) Plaintiff has judicially admitted that the letter of 5/31/00 was sent: Plaintiff has judicially admitted that this initial letter of 5/31/00 was sent, in the form set forth in Plaintiff's Motion for Summary Judgment filed in this case, where Plaintiff set forth the letter, stated that Defendant NRA sent this letter, and that the letter allegedly violated 15 USC Section 1692g. (see Plaintiff's Motion for Summary Judgment for said admission)

(b) Judge Garfinkel and Judge Droney ruled in their denial of Plaintiff's Motion for Summary Judgment that the initial letter which Defendant NRA sent to Plaintiff on May 31, 2000, did not violate any provision of the FDCPA. The Judges made this ruling

as a matter of law, and this finding constitutes the law of the case, and Plaintiff is

collaterally estopped from attempting to raise this issue at trial—when it has already

been conclusively and definitively decided on the merits. Defendants will file a motion

in limine to prevent Plaintiff from attempting to relitigate this issue.

    9. [re supposed violations of CUTPA and state statutes]

    Neither Defendant violated any provision of CUTPA or Conn. Gen. Stat. §42-

110b as found by the Banking Department's Reg.Conn. State Agencies §36a-809-3, or

any other state or federal law or regulation. Since neither Defendant violated the

FDCPA, it is clear neither Defendant violated any state law which mirrors the FDCPA.

If there was any violation of CUTPA, such violation was inadvertent, and pursuant to

prevailing case law is not a violation of CUTPA.

    To all claims of Plaintiff, Defendants interpose their affirmative defenses of bona

fide error (this applies to all federal and state claims) and laches/lack of due diligence

(this applies to all federal and state claims).

    (10) No action of Defendants violated 42 USC Section 407. Recipients of Social

Security benefits are free to use these funds to pay their debts. Authority: <u>Tookes v.

NYC Parking Violations Bureau</u>, 663 NYS 2d 28 (App. Div. 1997) [A payment plan

which debtor agreed to in order to get his seized car back was voluntary and

permissible, even though debtor's only source of income was the disability benefits];

<u>Moore v. Colautti</u> (1979, ED Pa), 483 F.Supp. 357, affd w/o op (1980, CA 3 Pa), 633

F.2d 210, and affd w/o op (1980, CA 3 Pa), 633 F.2d 211 [agreement to repay public

assistance is not an assignment or transfer of SSI benefits]; In re Gillespie (1984, BC CD

Colo), 41 BR 810 [statute will be triggered only by seizure through legal process];

Matavich v. Budak, 447 NE 2d 1311 (Ohio App., 1962) [one waives this exemption by

not asserting it at the proper time].

(11) Plaintiff cannot add new claims to his case 3 years after it was filed. Notice

pleading does not allow a Plaintiff to add new claims which were never referenced in

facts or legal argument in any of three prior complaints. See 15 USC Section 1692(d).

In addition, Plaintiff never added these additional claims in two amended complaints

filed earlier in this case, and is now barred from doing so. See Defendants' Motions in

Limine.


AFFIRMATIVE DEFENSES:

(1) Bona fide error: Any possible violations of the FDCPA, CUTPA, or any other

federal or state law by Defendants were not intentional, but resulted from bona fide error

notwithstanding the maintenance of procedures reasonabley adapted to avoid any such error.

See 15 USC Section 1692k(c)

This defense applies to all federal and state laws pleaded in Plaintiff's case.

AUTHORITY:

Howe v. Reader's Digest Asso. (1988, SD NY) 686 F.Supp. 461; Beattie v. D.M. Collections,

Inc. (1991, DC Del) 754 F.Supp. 383, later proceeding (1991, ED Del) 764 F.Supp. 925;

Stojanovski v. Strobl & Manoogian, P.C. (1992, ED Mich) 783 F.Supp. 319; Fox v. Citicorp

Credit Servs. (1994, CA9 Ariz) 15 F.3d 1507, 94 CDOS 733, 94 Daily Journal DAR 1257;

Russell v. Equifax A.R.S. (1996, CA2 NY) 74 F.3d 30; Lewis v. ACB Bus. Servs. (1998, CA6 Ohio) 135 F.3d 389, 1998 FED App. 39P; Picht v. Jon R. Hawks, Ltd. (2001, CA8 Minn) 236 F.3d 446; Moya v. Hocking (1998, WD Mich) 10 F.Supp. 2d 847; Jenkins v. Union Corp. (1998, ND Ill) 999 F.Supp. 1120; Watkins v. Peterson Enters. (1999, ED Wash) 57 F.Supp. 2d 1102; Edwards v. McCormick (2001, SD Ohio) 136 F.Supp. 2d 795; Frye v. Bowman (2002, SD Ind) 193 F.Supp. 2d 1070.

(2) Lack of due diligence/laches: Plaintiff Michael Guiliano, through the lack of due diligence, failed to take prompt, appropriate, and reasonable steps to assert his rights, which could have prevented him from suffering any harm, and which resulted in Defendants suffering harm, then you should find in favor of Defendants in this case. Specifically:

(a) Plaintiff Michael Guiliano failed to notify Defendant NRA, in response to its letter of May 31, 2000, that he disputed NRA's attempt to collect the SNET debt;

(b) Plaintiff Michael Guiliano could have but failed to notify Defendant NRA that there was already a payment plan existing between SNET and himself, thereby notifying NRA that they should not proceed to attempt to collect the SNET debt; or

(c) Plaintiff Michael Guiliano could have, but failed to decline to enter into a voluntary payment plan with Defendant NRA concerning Plaintiff's SNET debt; or

(d) Plaintiff Michael Guiliano at any time could have contacted his bank to cancel the voluntary withdrawals of funds, to which Plaintiff had agreed, to pay NRA in satisfaction of the SNET debt which NRA was attempting to collect;

Plaintiff failed to exercise due diligence in the assertion of his rights, and is guilty of unreasonable and inexcusable delay in asserting his rights. Defendants were harmed by this delay, and Plaintiff has waived his rights to pursue his claim against Defendants.

AUTHORITY:

Venus Lines Agency, Inc. v. CVG Intern. America, Inc. 234 F.3d 1225 [CA 11, Fla, 2000];

Allens Creek/Corbetts Glen Preservation Group, Inc. v. West, 2 Fed.Appx. 162 [CA 2, NY,

2001]; Ikelionwu v. U.S., 150 F.3d 233 [CA 2, NY, 1998]; Batiste v. City of New Haven, 239

F.Supp. 2d 213 [D.Conn, 2002]; K.P. v. Juzwic, 891 F.Supp. 703 [D.Conn. 1995].


COUNTERCLAIM:

(1)  The present action was brought by the Plaintiff in bad faith and for the purpose of

harassment, and Defendants should be awarded damages for having to defend against such a

case.

Authority: 15 USC Section 1692k(a)(3).



5. STIPULATIONS OF FACT AND LAW:

AGREED UPON FACTS:

1. Plaintiff is a natural person who resides in CT.


6. PLAINTIFF'S FACTUAL CONTENTIONS:

1. Defendant NRA is licensed as a collection agency by the State of Connecticut.

2. Defendant NRA is a debt collector.

3. NRA communicated with plaintiff and others in connection with efforts to

collect a personal debt allegedly originally owing to SNET Co., Inc. within one year

before this suit was filed.

4. Plaintiff's debt was for residential telephone service.

5. NRA had no authority to collect for SNET Co.

6. Harold Benson has been employed by NRA as a collector.

7. In and after May 2000, Plaintiff's social security disability funds were directly deposited in a bank checking account at First Union established for his personal and household purposes.

8. On June 23, 2000, Hazel Patterson told Harold Benson that Mr. Guiliano already had a payment arrangement with SNET.

9. On June 23, 2000, plaintiff and Hazel Patterson told Harold Benson that he could not take money out of plaintiff's bank account.

10. On June 23, 2000, Harold Benson set up an "Autopay" arrangement involving 6 monthly payments of $50 and a final payment at $49.95, all payments to be taken directly from plaintiff's First Union checking account by electronic transfer through an ACH (automated clearing house) system.

11. Plaintiff's money was removed from his bank account by NRA personnel in-house at NRA's own computer terminal, by use of software provided by a bank.

12. Harold Benson received $5 for setting up plaintiff's Autopay. He was also entitled to a bonus of 22.225% of all amounts collected over his monetary goal.

13. NRA electronically withdrew $50 from plaintiff's checking account on or about July 6, 2000.

14. NRA electronically withdrew $50 from plaintiff's checking account on or about August 7, 2000.

15. NRA did not receive written authorization to remove funds electronically from plaintiff's account.

16. NRA sent a letter dated 7/28/00 advising plaintiff that funds would be electronically withdrawn from his account on 8/6/00.

17. However, the postmark on the letter was August 14, 2001.

18. Defendants have no explanation for the date of mailing and have not audited their mailing service to ascertain when letters are mailed.

19. Plaintiff did not receive from NRA any letter other than the letter dated 7/28.

20. NRA collection records (user GMB) also show that on August 31, 2000, it received word from SNET that plaintiff claimed "The debtor called SNET stating that NRA was taking money out of his checking account without his permission – Notes state that they [SNET] were going to take back this account and handle in house."

21. Despite that specific information, NRA again processed an Autopay; its Collection Records show a $50 payment received on 9/6/00, which was returned for insufficient funds on 9/11/00.

22. NRA had not stopped the Autopay process as of September 12, 2000.

23. Arthur Kusic is a debt collection lawyer and is a founder, the Chief Executive Officer, majority shareholder, chairman of the board, sole director, highest paid person (six figures), and general counsel for NRA. In 2000, Mr. Kusic was also the

president of NRA. In his capacity as CEO he vetoes expenditures.

24. Arthur Kusic reviewed and approved the collection letters used in this matter.

25. Between September 21, 2000 and October 4, 2000, Arthur Kusic reviewed the NRA collection records for Michael Guiliano and the SNET customer notations for Michael Guiliano.

26. Arthur Kusic refused to refund the funds taken out of plaintiff's account after he knew of plaintiff's assertion that the funds were wrongfully taken.

27. Arthur Kusic reviewed and approved NRA's system of electronically removing funds from debtor's bank accounts.

28. In April of 2000, Hazel Patterson and SNET entered into a payment agreement wherein Ms. Patterson, on behalf of Mr. Guiliano, would pay SNET $25/mo., to pay plaintiff's outstanding indebtedness to SNET.

29. NRA refused to release the funds electronically taken from Mr Guiliano's bank account when contacted by Hazel Patterson, in that Hazel Patterson had no apparent legal authority to act on behalf of Mr. Guiliano.


7. DEFENDANTS' FACTUAL CONTENTIONS:

(1) In April of 2000, Plaintiff Michael Guiliano owed a telephone bill to SNET in the amount of $349.95, and was delinquent in payment of this bill.

(2) SNET referred this bill to a collection agency known as Forward Thinking for collection.

(3) Forward Thinking in turn referred this bill to NRA for collection on or about May 23, 2000.

(4) NRA is a collection agency, which is in the business of collecting past-due debts for a number of businesses.

(5) Prior to the time that SNET referred this bill out for collection to Forward Thinking and NRA, SNET entered into a payment plan with Hazel Patterson, who is Plaintiff Michael Guiliano's girlfriend's mother, whereby Ms. Patterson agreed to pay the SNET bill.

(6) According to SNET records, between the dates that SNET made this agreement, and the date that it referred out the debt for collection, no portion of the debt was paid.

(7) When NRA received the Michael Guiliano account for collection, NRA was unaware that Hazel Patterson had already entered into a payment plan with SNET to pay the delinquent bill.

(8) Hazel Patterson did not have a Power of Attorney or a Guardianship over Plaintiff Michael Guiliano and his affairs; hence, Plaintiff Michael Guiliano retained the authority in 2000 to enter into agreements to pay his own debts.

(9) Thinking that Plaintiff's debt to SNET in the amount of $349.95 was still owing, NRA made an attempt to collect this bill, after said debt was referred to NRA for collection.

(10) On or about May 31, 2000, NRA sent a letter to Michael Guiliano, stating that the SNET debt was unpaid. This letter included the required FDCPA validation notice, and gave Mr. Guiliano an attempt to dispute the validity of the debt.

(11) The validation letter which NRA sent to Michael Guiliano on May 31, 2000, fully complied with all the requirements of the Fair Debt Collection Practices Act for such validation letters.

(12) Despite receiving the letter from NRA, allowing him an opportunity to contest the SNET debt, Plaintiff Michael Guiliano failed to contact NRA either in writing or by telephone to indicate that he disputed the debt, or to notify NRA that Hazel Patterson had already entered into a payment plan with SNET to pay Plaintiff's SNET debt, which NRA was now attempting to collect.

(13) When NRA received no communication from Plaintiff Michael Guiliano indicating that he contested the validity of this debt, or that there was already a payment plan in place, NRA proceeded to attempt to collect this debt for SNET.

(14) NRA's employee, Harold Benson, called Plaintiff Michael Guiliano on June 23, 2000, and pursuant to the telephone calls from Mr. Benson, Plaintiff Michael Guiliano acknowledged the validity of the debt, and entered into a voluntary payment agreement with NRA to pay the SNET debt, by having 6 payments of $50 each, and a final payment of $49.95 automatically deducted from Plaintiff's bank account, and forwarded to NRA.

(15) As part of this agreement, Plaintiff Michael Guiliano provided information on his banking account to NRA.

(16) Plaintiff's agreement to pay the SNET debt to NRA was voluntary.

(17) Plaintiff voluntarily consented to the payment plan, and to funds being withdrawn from his bank account and forwarded to NRA to pay the debt, which he owed to SNET.

(18) At the time that Plaintiff made this voluntary agreement, no payments had been made to SNET under the terms of the proposal made by Hazel Patterson in April of 2000.

(19) Plaintiff at any time could have notified his bank not to withdraw the payments to send to NRA; but Plaintiff failed to notify his bank to cancel these scheduled payments. Plaintiff at no time made any attempt to contact his bank to cancel the payment agreement and scheduled withdrawals he entered into with NRA—despite the fact that scheduled payments were withdrawn from his bank account on July 6, 2000 ($50), and August 6, 2000 ($50).

(20) Scheduled withdrawals of $50 each were sent from Plaintiff's bank to NRA on July 6, 2000, and August 6, 2000. These withdrawals in addition to the payment plan into which Plaintiff entered on June 23, 2000, put Plaintiff on notice of the schedule and withdrawals, and gave him the opportunity at any time to cancel any further scheduled withdrawals by contacting his bank or NRA—which he did not do.

(21) At all times, NRA implemented a system which was carefully calculated to respect the rights of debtors under the FDCPA and other consumer rights laws, and made a good faith effort to comply with all provisions of the FDCPA, and to see that all of its employees complied with all provisions of the FDCPA.

(22) If NRA violated the FDCPA or any other state or federal law, such violations violations of law were unintentional and resuled from bona fide error, or, in the alternative, were technical violations, for which Defendants should not be deemed liable.

(23) Any funds collected by NRA from Plaintiff were applied to Plaintiff's debt to SNET, so Plaintiff did not suffer any damages as a result of NRA's effort to collect Plaintiff's debt, and nothing NRA did regarding collection of this account was deceptive or misleading.

(24) Plaintiff's debt to SNET remains unpaid.


8. LEGAL ISSUES:

Plaintiff:

Is NRA a "debt collector" within meaning of FDCPA?

Is Arthur Kusic a "debt collector" within meaning of FDCPA?

Did defendants properly raise or establish any of their affirmative defenses?

Is defendants' violation of EFTA also an unfair or deceptive practice within the FDCPA?

Defendants:

Is NRA a "debt collector" within meaning of FDCPA?

Is Arthur Kusic a "debt collector" within meaning of FDCPA?

Is Arthur Kusic individually liable for any violation of federal or state law pleaded by Plaintiff? Has Plaintiff pleaded or proved that the corporate veil of NRA should be pierced?

Can a recipient of Social Security benefits use these funds to pay his own debts?

When a debtor voluntarily agrees to repay a debt, does this constitute "harassment", "abuse", or "misleading or deceptive" behavior within the meaning of the statutes pleaded by Plaintiff (15 USC 1692d, e, & f; CUTPA);

In FDCPA cases, which standard controls—the "least sophisticated consumer" or the "unsophisticated consumer"? and does each standard require a basic level of reason and knowledge from the debtor.

Did Defendant NRA violate any state or federal law in this case?

Did Defendant Arthur Kusic violate any state or federal law in this case?


9. VOIR DIRE QUESTIONS attached.


10. LIST OF WITNESSES:

**Plaintiff may call**:

1. Michael Guiliano, 204 Oak Street, West Haven CT 06516 to testify to the nature of the debt; the direct deposit of his Social Security Disability funds; defendants' collection efforts; his refusal to make or to authorize payment to defendant; his damages.

2. Hazel Patterson, 145 Noble Street, West Haven CT 06516, to testify to her knowledge of the collection efforts; her communications with the creditor; the date of receipt of the only letter plaintiff got from NRA; her conversation with Harold Benson about the debt in which she confirmed that payment arrangements had been made directly with the creditor; and to damages.

3. Keeper of the Records for the creditor, to testify that NRA had no authority to collect for the creditor.

4. Arthur Kusic to testify to his stature and responsibilities at NRA before and during 2000; his review of NRA's account records; his review of SNET customer records; information he received that the funds taken were Social Security Disability Funds; his determination to keep plaintiff's money.

5. Steven Kusic to testify as to NRA's records and EFT procedures.

6. Witnesses identified by defendant, as appropriate.

OBJECTIONS re all of Plaintiff's witnesses:

Defendants object to the extent the proposed testimony amounts to opinions of law or conclusions of ultimate fact, which invades the province of the jury, such as that NRA violated any provision of state or federal law.

Defendants object to any testimony as to which the witness has no personal knowledge.

Defendants object to any duplicative testimony from the first 2 witnesses. Fed. R. Evid. 611; 403(b)

Defendants reserve rights to object to relevancy or foundation, or to the extent that any testimony violates any motion in limine granted by the court.

**The defendant may call**:

(1) Steve Kusic, President of NRA: will testify regarding the business of National Recovery Agency; that it is a corporation, and is in the business of collecting past-due accounts for a variety of businesses; that procedures have been implemented by NRA to comply with all consumer protection laws and statutes; that NRA's employees are trained in procedures to follow consumer laws in collecting debts; that there was an arrangement between SNET, Forward Thinking, and NRA to collect past due debts. That SNET forwarded Plaintiff's debt for collection to NRA without disclosing to NRA that Plaintiff had already entered into a payment plan with SNET; that NRA reasonably relied on SNET's representation that Plaintiff's debt was due and owing, and that NRA was unaware of the prior payment plan already entered into

between Hazel Patterson and SNET; that when NRA contacted Plaintiff, he admitted that he owed the debt, and entered into a payment plan, whereby he authorized the withdrawal of funds from his bank account to pay the SNET debt; that Plaintiff consented to the withdrawal of funds from his bank account to pay his debt to SNET; that Plaintiff did not inform NRA of any preexisting payment plan between Hazel Patterson and SNET; that Plaintiff at any time could have cancelled the payment plan he entered into with NRA, and at any time could have contacted his bank to cancel the withdrawals he had authorized—but Plaintiff failed to do so. That NRA did not violate any provision of state or federal law, and if it did, any such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Procedures concerning recalls from Forward Thinking concerning SNET debts.

OBJECTIONS: Plaintiff objects to any mention or discussion of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET despite court order, and since the document is the best evidence.

Plaintiff objects to the extent the proposed testimony amounts to opinions of law or conclusions of ultimate fact, which invades the province of the jury, such as That NRA did not violate any provision of state or federal law, and if it did, any such

violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Plaintiff objects to any testimony as to which the witness has no personal knowledge, such as whether plaintiff contacted his bank.

Plaintiff objects to any duplicative testimony from the first 2 witnesses. Fed. R. Evid. 611; 403(b)

(2) Arthur Kusic, chairman and CEO of NRA: will testify that he had no personal, individual involvement in the collection of the SNET debt from Plaintiff, and that he is not individually liable for any violation of state or federal law; regarding the business of National Recovery Agency; that it is a corporation, and is in the business of collecting past-due accounts for a variety of businesses; that procedures have been implemented by NRA to comply with all consumer protection laws and statutes; that NRA's employees are trained in procedures to follow consumer laws in collecting debts; that there was an arrangement between SNET, Forward Thinking, and NRA to collect past due debts. That SNET forwarded Plaintiff's debt for collection to NRA without disclosing to NRA that Plaintiff had already entered into a payment plan with SNET; that NRA reasonably relied on SNET's representation that Plaintiff's debt was due and owing, and that NRA was unaware of the prior payment plan already entered into between Hazel Patterson and SNET; that when NRA contacted Plaintiff, he admitted that he owed the debt, and entered into a payment plan, whereby he authorized the withdrawal of funds from his bank account to pay the SNET debt; that Plaintiff

consented to the withdrawal of funds from his bank account to pay his debt to SNET; that Plaintiff did not inform NRA of any preexisting payment plan between Hazel Patterson and SNET; that Plaintiff at any time could have cancelled the payment plan he entered into with NRA, and at any time could have contacted his bank to cancel the withdrawals he had authorized—but Plaintiff failed to do so. That NRA did not violate any provision of state or federal law, and if it did, any such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Procedures concerning recalls from Forward Thinking concerning SNET debts.

OBJECTIONS: Plaintiff objects to any mention or discussion of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET despite court order, and since the document is the best evidence.

>Plaintiff objects to the extent the proposed testimony amounts to opinions of law or ultimate fact, which invades the province of the jury, such as the witness is not personally liable; That NRA did not violate any provision of state or federal law, and if it did, any such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

>Plaintiff objects to any testimony as to which the witness has no personal knowledge, such as whether plaintiff contacted his bank.

>Plaintiff objects to any duplicative testimony from the first 2 witnesses.

(3) Harold Benson, employee of NRA: will testify regarding the procedures he follows as an employee of NRA to collect debts. that procedures have been implemented by NRA to comply with all consumer protection laws and statutes; that NRA's employees are trained in procedures to follow consumer laws in collecting debts; that the notes which he entered into the computer system immediately after he called Plaintiff reveal and prove the following: he called Plaintiff in order to collect the SNET debt, which had been referred to NRA for collection; that Plaintiff admitted he owed the debt, and entered into a payment plan to pay the debt, by having $349.95 voluntarily withdrawn from his bank account and forwarded to NRA; that Plaintiff voluntarily agreed to enter into this payment plan; that Plaintiff did not disclose any prior payment plans already entered into with SNET; that no one, including Hazel Patterson, called him to discuss Plaintiff's debt to SNET or payment plan entered into with NRA; that as a matter of standard operating procedure, he does not discuss debtors' cases with third-persons, unless they demonstrate that they have authority to act on behalf of a debtor.

OBJECTIONS: Plaintiff objects to any mention or discussion of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their

authority to collect for SNET despite court order, and since the document is the best evidence.

>Plaintiff objects to the extent the proposed testimony amounts to opinions of law or ultimate fact, which invades the province of the jury, such as That NRA did not violate any provision of state or federal law, and if it did, any such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

>Plaintiff objects to any testimony as to which the witness has no personal knowledge, such as whether plaintiff contacted his bank.

>Plaintiff objects to any duplicative testimony already educed from the first 2 witnesses.

(4) Fayth Whiteman, employee of NRA: will testify concerning the procedures employed by NRA regarding when debtors authorize withdrawals from their bank accounts to pay debts which NRA is attempting to collect; that Plaintiff could at any time have contacted NRA to cancel the payment plan he entered into with Harold Benson; that Plaintiff could at any time have contacted his bank to cancel the scheduled withdrawals of funds to pay the SNET debt being collected by NRA;

(5) Anita Schaar, employee of NRA, Manager of Clerical Department: may testify concerning NRA debt collection procedures, including coding and manner in which accounts are put into the computer system, and notes are made by collectors.

(6) Gayle Brown, project manager for NRA: will testify regarding the relationship between NRA and Forward Thinking, the manner in which SNET accounts were forwarded to NRA, and the manner in which they were withdrawn.

OBJECTION: Plaintiff objects to any mention or discussion of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET despite court order, and since the document is the best evidence.

(7) Hazel Patterson: will testify that she did not have a power of attorney or guardianship over Michael Guiliano; that she did not call Mr. Guiliano's bank to cancel the scheduled withdrawals to pay the SNET debt; that she was not current in payment of the $25/month due on the payment agreement she entered into with SNET in April of 2000;

OBJECTION: Plaintiff objects to defendant calling Hazel Patterson since she will have testified on plaintiff's direct case and further testimony would be duplicative. Fed. R. Evid. 611; 403(b)

(8) Representative of Plaintiff's bank: will testify that Plaintiff at any time could have cancelled the arrangement whereby payments were deducted from his banking account and sent to NRA to pay the SNET debt in issue; that Plaintiff never contacted his bank to cancel these withdrawals.

(9) Representative from SNET to testify concerning any payment plan entered into by Hazel Patterson with SNET, to pay Plaintiff's SNET bill of $349.95. And to testify that any payments collected by NRA were forwarded to SNET; and to testify concerning any recall of this debt.

OBJECTION: Plaintiff objects to any mention or discussion of payments, authority, arrangement, or information regarding SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET , or their transmission of funds collected, despite court order, and since the documents are the best evidence.

(10) Representative of Comcast: to testify that Plaintiff was called regarding a delinquent debt.

OBJECTION: INADMISSIBLE Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998) (focus is on conduct of debt collector and whether it violated the FDCPA, not on conduct of consumer) Fed. R. Evid. 401, 402, 403, 404, 608, 609.

(11) Representatives of Plaintiff's other creditors: to testify that Plaintiff was called regarding delinquent debts.

OBJECTION: INADMISSIBLE Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998) (focus is on conduct of debt collector and whether it violated the FDCPA, not on conduct of consumer) Fed. R. Evid. 401, 402, 403, 404, 608, 609.

(12) Members of Plaintiff's AA group: to testify that Plaintiff used alcohol and/or drugs within the last 6 years.

OBJECTION: INADMISSIBLE Keele v. Wexler, 149 F.3d 589, 593 (7th Cir. 1998) (focus is on conduct of debt collector and whether it violated the FDCPA, not on conduct of consumer) Fed. R. Evid. 401, 402, 403, 404, 608, 609.

(13) Witnesses identified by Plaintiff, as appropriate.

11. EXHIBITS:

A. Plaintiff may introduce

1. NRA Collection records

2. NRA letter dated 7/28/00 but postmarked 8/14/00

3. Plaintiff's bank records showing NRA withdrawals, NSF fees, damages.

4. Certified copies of consent orders against NRA signed by Arthur Kusic
Objection: immaterial and irrelevant.

5. Certified copies of public records regarding Arthur Kusic's role at NRA.

6. NRA telephone records for the date in question.

7. Letter 9/21/00 to Kusic notifying him that funds were SS etc. redacted to excise settlement proposal (Fed. R. Evid. 408)

8. Kusic reply of Oct. 4, 2000; same redaction.

9. Defendants' responses to admissions 1, 2, 4, 7, 8, 11 and discovery to the extent facts are not stipulated.

OBJECTION TO ALL EXHIBITS: relevance, foundation, materiality.

B. Defendants may introduce

(1) Validation letter sent to Plaintiff by SNET;

Objection: authenticity, foundation, and relevance

(2) Validation letter sent to Plaintiff by Defendant NRA;

Objection: authenticity, foundation

(3) Contract between NRA and Forward Thinking;

OBJECTION: Plaintiff objects to any mention or discussion of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET despite court order, and since the document is the best evidence.

(4) Debtor screen showing transactions on Plaintiff's account at NRA;

(5) agreement between NRA and Forward Thinking;  DUPLICATIVE

OBJECTION: Plaintiff objects to any mention or discussion of authority,

arrangement, or information from SNET or Forward Thinking, pursuant to his motion in

limine, Doc. No. 118, since defendants refused to produce any documentation of their

authority to collect for SNET despite court order, and since the document is the best

evidence.

(6) Log of communications between NRA and Forward Thinking in late August/

early September, 2000, pertaining to SNET communications regarding the status of

Plaintiff's debt;

OBJECTION: Plaintiff objects to any mention or discussion of authority,

arrangement, or information from SNET or Forward Thinking, pursuant to his motion in

limine, Doc. No. 118, since defendants refused to produce any documentation of their

authority to collect for SNET despite court order, and since the document is the best

evidence.

    (7) Reminder Notices to Plaintiff, that funds would be debited from his bank account, pursuant to his earlier agreement to pay the SNET debt in this manner;

    Objection: authenticity, foundation

    (8) phone logs, showing calls to Plaintiff;

    (9) Hazel Patterson's telephone records;

    OBJECTION: authenticity and relevance.

    (10) NRA collection records, and contact sheets;

    (11) Log of SNET notes on Plaintiff's debt, with notations.

    (12) Letter of 9/8/00;

    Objection: authenticity, foundation, relevance

    (13) Form ALS-PS;

    Objection: authenticity, foundation, relevance

    (14) Form ALS-SN, Sample Follow-Up Letter.

    Objection: authenticity, foundation, relevance

    (15) any document attached as an exhibit to the depositions taken in this case.

    Objection: authenticity, foundation, relevance

    (16) any document exchanged in discovery.

    Objection: authenticity, foundation, relevance

12. <u>DEPOSITION TESTIMONY</u>

    <u>Plaintiff</u>:

1. Harold Benson including pages 13, 14, 16, 23, 30, 31.

2. Arthur Kusic  including 4, 5, 7, 8, 11, 13, 14, 15, 18, 19, 20, 21, 25, 26, 28, 29, 31, 39

3. Steven Kusic, including 62-63, 70-79, 91-93

4. Michael Guiliano including pages 9, 24-49

Defendants:

1. Michael Guiliano; pp. 4, 5, 6, 19, 10, 11, 12, 13, 15, 17, 20, 21, 23, 24-25, 26-27, 28, 29, 230-33, 34-35, 36, 37, 38, 40, 42, 43, 44, 45, 46, 47, 48-49.

2. Harold Benson; pp. 8-9, 10, 12-14, 15-18, 23-25, 30-31, 35-36, 38;

3. Steven Kusic; pages 9, 13, 15016, 19, 20, 21, 22, 23-25, 30, 31, 38-39, 50, 62, 64, 68, 69, 70, 87-89, 90-93;

4. Arthur Kusic; pages 5, 8, 21, 18019, 39-40;


13. REQUESTS FOR JURY INSTRUCTIONS  ATTACHED

14. ANTICIPATED EVIDENTIARY PROBLEMS :

B. Motions in limine will be submitted by Defendants as follows:

ALREADY ARGUED AND DECIDED, OR ALREADY ADMITTED BY PLAINTIFF :

(1) exclude all evidence and argument pertaining to any supposed violation by Defendants of the EFTA, including any claims by Plaintiff that violations of the EFTA by Defendants have in any way, shape, or form been established, and any assertion that

the Court found a violation of the EFTA; Authority: Ruling of Judges Garfinkel and Droney on Plaintiff's Motion for Summary Judgment, stating that the EFTA was not referenced in Plaintiff's complaint and that Plaintiff cannot now present an EFTA claim—since the 1-year statute of limitations has already expired. See pages 16-17. This is the law of the case.

(2) exclude all evidence and argument pertaining to any argument by Plaintiff that the failure of Defendant NRA to send reminder notices to Plaintiff before each voluntary withdrawal of funds from his bank account constituted a violation of 15 USCA Section 1692(f)(2). Ruling of Judges Garfinkel and Droney on Plaintiff's Motion for Summary Judgment (p. 7), stating that this statute is inappropriate to such an argument, because that section pertains to postdated instruments. This is the law of the case.

(3) exclude all evidence and argument pertaining to any claim that the Defendants' initial letter to Plaintiff violated 15 USCS Section 1692g. Validation of debts. The ruling by Judges Garfinkel and Droney on Plaintiff's Motion for Summary Judgment was definitive, to-wit: there was no violation of this statute. See pages 7-14. This ruling constitutes the law of the case.

(4) exclude all evidence and argument pertaining to Plaintiff's assertion that NRA's failure to secure written authorization from Plaintiff for withdrawals from his bank account to pay the SNET debt violated the FDCPA, specifically 15 USCS Sections 1692f(1), 15 USCS Section 1692f(6), and 15 USCS Section 1692e(5). The

ruling of Judges Garfinkel and Droney on Plaintiff's Motion for Summary Judgment carefully considered, analyzed, and rejected these claims. This is the law of the case. Pages 14-16.

(5) exclude all evidence and argument that Defendant NRA's phone call of 6/23/00 violated 15 USC 1692g ; Plaintiff admitted in his Motion for Summary Judgment that Defendant NRA sent a validation letter on 5/31/00, which was the first contact between NRA and Plaintiff ; in denying said Motion for Summary Judgment, the Court determined that the validation letter of 5/31/00 did not violate 15 USC Section 1692g.

NEVER CLAIMED OR PRESENTED IN ANY OF PLAINTIFF'S COMPLAINTS :

(1) exclude any mention of the source of funds in Plaintiff's bank account as being from Social Security Disability. Basis: Plaintiff failed to demonstrate that this statute is relevant, and failed to provide a jury instruction as to this statute.

(2) exclude all evidence and argument as to supposed violation of 15 USC Section 1692c ; this statute was not pleaded in any of Plaintiff's 3 complaints (despite motion for more definite statement, which was granted by the Court) ;

(3) exclude all evidence and argument that Defendant NRA did not have authority to collect the SNET debt ; [whether advanced under supposed authority of 15 USC Section 1692d or e, or f] ; this was never presented in any of Plaintiff's three complaints, despite a Motion for More Definite Statement, which was granted by Judge

Droney.

SANCTION FOR ABUSE OF DISCOVERY :

(1) exclude any mention of the source of funds in Plaintiff's bank account as being from Social Security Disability. Basis: Plaintiff failed to provide the items of discovery which Defendants requested pertaining to information from the Social Security Administration, demonstrating that Plaintiff receives Social Security Disability.

(2) exclude from evidence any evidence offered by Plaintiff, if the Court determines that such evidence was requested by Defendants from Plaintiff during discovery, and Plaintiff failed to provide such evidence.

IRRELEVANT/PREJUDICIAL :

(1) exclude from evidence any mention of any consent decree involving Arthur Kusic and NRA; such evidence is irrelevant.


15. PROPOSED FINDINGS AND CONCLUSIONS FOR NONJURY CASE N/A

16. TRIAL TIME:  The parties estimate that the trial will take two days.

17. FURTHER  PROCEEDINGS.

Plaintiff contends Defendants have not complied with an Order compelling discovery. A motion for appropriate relief has been filed (Doc. No. 118).  Plaintiff also requests a transfer of the trial to New Haven in the interests of justice and pursuant to

28 U.S.C. § 1404(c) and Fed. R. Civ. P. 1, because the physical infirmities of the plaintiff and his witness and their lack of reasonable means of transportation present significant obstacles to their attendance at trial in Hartford, and due to the location of plaintiff and his witness (West Haven) and the New Haven location of counsel for all parties.

18.  ELECTION FOR TRIAL BY MAGISTRATE JUDGE. The parties do not agree to trial before the United States Magistrate Judge.

19. VERDICT FORM   attached

20. STATEMENTS IN LIEU OF OPENING STATEMENT  ATTACHED

THE PLAINTIFF

2/10/04
(Date)

BY _____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511
(203) 772-0395

THE DEFENDANTS

2/10/04
(Date)

BY _____
Eric T. Dean Jr.
111 Whitney Ave
New Haven CT 06510
(203) 787-5885