UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL GUILIANO : | CASE NO.: 300CV02115CFD |
| : | |
| v. : | |
| : | |
| NATIONAL RECOVERY AGENCY, INC. : | July 8, 2004 |
| ARTHUR A. KUSIC : | |

PLAINTIFF'S MEMORANDUM RE MOTION IN LIMINE
RE EVIDENTIARY ISSUES AND DOCUMENTS

(1) <u>Character of plaintiff.</u> Defendants' witnesses 10-12 are meant to impugn plaintiff's character which is entirely improper. We request an order applicable to defendants, their counsel, and their witnesses not to mention or inquire about plaintiff's other debts or past troubles since the information is not relevant or material to whether defendants violated the law; and is prohibited by Fed. R. Evid. 401, 402, 403, 404, 608, 609. See also <u>Keele v. Wexler</u>, 149 F.3d 589, 593 (7th Cir. 1998) (focus is on conduct of debt collector and whether it violated the FDCPA, not on conduct of consumer). We also request an order precluding defense witnesses 10-12.

(2) <u>Steps taken in investigation by Arthur Kusic not privileged.</u>  Arthur Kusic admittedly investigated plaintiff's prelitigation claim that NRA had wrongfully taken money out of plaintiff's bank account. At his deposition, pages attached, he asserted attorney client privilege as to the steps he took to investigate and respond, which are believed to include reviewing NRA collection records (Def. Proposed Ex. 4) and SNET notes (Def. Proposed Ex. 11).  Plaintiff will be inquiring about this information and requests a ruling that the steps an attorney took to investigate are not privileged.  What the attorney did, and events which occurred after the consultation are not privileged. <u>State v. Yates</u>, 174 Conn. 16, 20,

381 A.2d 536 (1977); United States v. Brickey,, 426 F.2d 680, 685 (8th Cir. 1970) (attorney's acts or services during course of representation not privileged because they are not private professional communications); Matter of Grand Jury Subpoenas, 959 F.2d 1158 (2d Cir. 1992) (third party documents and information not subject to privilege, citing Hickman v. Taylor, 329 U.S. 495, 508 (1947)).

(3) Documents and testimony re SNET and Forward Thinking. Plaintiff objects to any documents or testimony of authority, arrangement, or information from SNET or Forward Thinking, pursuant to his motion in limine, Doc. No. 118, since defendants refused to produce any documentation of their authority to collect for SNET despite court order, and since the document is the best evidence. Def. Ex. 3, 5, 6 should be precluded. Related (and also duplicative) testimony from Arthur and Steven Kusic and Gayle Brown should be precluded. The documents have not been produced to plaintiff as of July 7, 2004.

(4) Letters purportedly sent to plaintiff. Defendants did not themselves send any letters to plaintiff. They had an outside vendor send their collection letters. Their collection records show only that they ordered the letters from the outside vendor. There is no foundation for defendants' Ex. 1 (which is also irrelevant, since any SNET validation letter does not substitute for a validation letter from defendants), Ex. 2 (defendants do not know what form of letter they sent), Ex. 7 (other than the letter plaintiff got), Ex. 13, or Ex. 14. Defendants did not propose any witness or testimony about the mailing of the Exhibits in any event. Ex. 1, 2, 7, 13, 14 should be precluded.

(5) Letter of 9-8-2000. This otherwise unidentified letter (who is sender/recipient?) has never been produced in discovery and plaintiff is not aware of any letter of that date. No such letter appears in defendants' collection records. Def. 12.

(6) Payments to SNET. Defendants did not send payments to SNET; they sent them to Forward

2

Thinking. S. Kusic Deposition at 18. Defendants should be precluded from any testimony or documents as to what happened to the money after they took it. If defendants wrongfully took money from plaintiff's bank account, they cannot excuse their conduct by claiming that the money was used to pay plaintiff's debt. The violation occurred when the taking occurred, even if the money taken was given to charity, to the poor, or to a creditor. Neither the FDCPA nor the EFTA allows a wrongful taking to be excused by "He owed the money and should have paid." By analogy, a thief cannot steal money and give it back when caught; misappropriation or embezzlement of funds is not excused by the good use to which the miscreant put the funds.

(7) <u>Testimony not based on personal knowledge.</u> Defendants have identified several witnesses to what plaintiff did or did not do, and could or could not have done, such as contacting his bank.

(8) <u>Testimony as to ultimate issue.</u> Defendants propose witnesses to testify that they did not violate any law. The facts are within the province of the jury; applicable law is the province of the Court.

THE PLAINTIFF

BY____/s/ Joanne S. Faulkner___
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on July 8, 2004, postage prepaid, to:

Eric Dean Jr
111 Whitney Ave
New Haven CT 06510

____/s/ Joanne S. Faulkner__
Joanne S. Faulkner

3

14

```
1        Q.  And what steps did you take to draft
2   the letter in response?
3        A.  What steps did I take?  I made inquiry.
4              MR. DEAN:  I would object.  I
5   think you're getting into attorney/client
6   privilege.  If he's representing the corporation
7   and he's investigating who he talked to and what
8   they said, it's not discoverable.
9              MS. FAULKNER:  I'm not asking
10  what they said, I'm asking what he did.
11             MR. DEAN:  Well, he obviously
12  investigated if he wrote you a letter in
13  response.
14             MS. FAULKNER:  Would you let him
15  answer, please?
16  BY MS. FAULKNER:
17       Q.  What did you do?
18       A.  I'm first going to ask for advice from
19  my counsel and then I will give you an answer.
20       Q.  You are not allowed to interrupt the
21  deposition for advice from your counsel.
22       A.  Very well then, then I will raise
23  attorney/client privilege myself.
24             MR. DEAN:  We've already argued
25  that, that's an objection.
```

15

Q. Mr. Kusic, are you refusing to answer what you did in response to my letter before you drafted your letter?

MR. DEAN: He already answered that, he said he --

Q. Let him answer, please.

A. Yes, I'm refusing to answer.

MR. DEAN: He said he investigated the case.

MS. FAULKNER: Would you step out of the room, Mr. Dean, and stop answering for your client?

MR. DEAN: No, I'm not going to step out of the room. I'm objecting as his attorney. I know you would like to decide who is in here and who is not in here, but I can be here as his attorney.

BY MS. FAULKNER:

Q. Mr. Kusic, you wrote me a letter on October 4th and the facts were entirely made up?

A. The facts were entirely made up?

Q. Is that correct?

A. Of course not.

Q. Good. Where did you get the facts, what did you do to get the facts?

16

```
 1        A.   Right now I'm going to say that I have
 2   a serious question, okay?  And the serious
 3   question is that maybe you're entitled to an
 4   answer to that and maybe it violates
 5   attorney/client privilege.  I do not know which
 6   one of the two.  To air on the side of being
 7   proper, I'm going to once again invoke the
 8   attorney/client privilege.
 9        Q.   Do you have a computer screen in your
10   office that you can access?
11        A.   In to National Recovery Agency?
12        Q.   Right.
13        A.   I do not.
14        Q.   Can you walk into National Recovery
15   Agency and access a computer screen?
16        A.   Do I have the ability of doing that?
17        Q.   Yes.
18        A.   Yes, I do.
19        Q.   Do you think that's what you did to
20   respond to my letter?
21             MR. DEAN:  Objection, again.
22   You're getting into attorney/client privilege
23   and work product privilege.
24        A.   Ms. Faulkner, this, I don't want to
25   treat this as a game, okay?  That is first and
```

```
 1   foremost. Okay. I've been out of law school
 2   for 41 years and I have too much respect for our
 3   system to play games, okay? If you fail to
 4   believe that you can go to all seven of our
 5   judges in Dauphin County, Pennsylvania, and for
 6   want of a better term, you can check me out. I
 7   do not play games within the law. I am not here
 8   to play games with you. There are serious
 9   matters here, especially privileged matters.
10   There are other matters which I won't get into
11   right now. If we get a judge to tell me that I
12   have to tell you what I did with respect to
13   answering your letter, that's fine. But I'm
14   going to hopefully save you some time, because
15   if you follow the course of conduct of delving
16   into what I did with my client in order to
17   secure the information to respond to you, my
18   answer is going to be the same each and every
19   time. I am not going to discuss that and I hope
20   that you understand that I'm saying this, the
21   judicial time economy is not the proper thing
22   for us today, but if you want to stay here all
23   night and ask me the same questions I will give
24   you the same answers. I am invoking
25   attorney/client privilege and I should think
```